3-24-02-22 in the marriage of Timothy P. Hoster, appellee, and Tiffany Y. Hoster, appellant. Thank you. For the record, we're having a few technical difficulties and Justice Albrecht is able to see and hear and also to communicate with the court and with the attorneys, but the video, her video is not being connected. So, just for your information, that's why you see Justice Albrecht's name and not a picture. And then I've been informed that Mr. Kramer, attorney for the appellee, his video is from his phone. But we can see and hear everyone for the argument. So, just that being noted, we will ask at this time, Ms. Hoster, if you will turn on your audio, you may proceed. Okay. Good morning, your honors. My name is Tiffany Hoster, for the record, the appellee. I mean, appellant. I'm sorry. I'm nervous. I'm so sorry. Sure. You know, I'm here pro se, you know, not because I wanted to be pro se, but because my ex-husband, prior to filing for divorce, you know, took all of the marital assets and, you know, dispersed them to his brothers and hid some of them, you know, so I was unable to have effective counsel. I did hire, I did pay two attorneys in this case. And, you know, neither attorney was present at the trial. One of the attorneys, which name was Kevin P. McCarty, I didn't know that he was suspended for, I didn't know that he was suspended through the Supreme Court. And so that's why I'm here pro se. So, I'm here, you know, asking the court, because it resulted in my ex-husband receiving more than 90% of the marital assets and just about all of the liquid assets of the marriage. It's over a 20-year marriage. We were married in 2001. He filed this during a pandemic. You know, there was several false statements that he made in the petition, as well as throughout the entire court process. He filed this December 2020 during a pandemic, when I was also going through a medical issue myself and received a very serious diagnosis through my doctors, my cardiologists, my rheumatologists. And so I'm just asking, you know, the court for a fair and equitable settlement because the current one would render me homeless and without any assets. Okay. Now that goes to the judgment of dissolution that was entered. Correct. Yes. As well as the orders that followed after that was based on misstatements that my ex-husband stated to the courts, you know, statements such as, oh, my wife doesn't work. My wife is a hoarder. Throw her things out on the street. I have been a victim of abuse throughout the entire, really the entire marriage. The first attorney that I found was through the domestic abuse counseling that I was receiving. So they were referred through that. The very first attorney that I hired, I never received any monies back from any of the attorneys that, that I, you know, that I paid to help me. The attorney that was suspended even appeared in court, you know, stating that he was working for the petitioner, which is my ex-husband. Also in the petition, it didn't, my, my son graduated college throughout this process. I was getting him through college. They were, my, my ex-husband refused to help with the college expenses. Like he had promised to do so. My, my son received straight A's throughout all of high school, throughout all of junior high school. And that was promised to him. And that never was addressed, addressed or handled. I never received alimony throughout the court process, as well as afterwards when it was finally ordered, even though there's a large discrepancy in our salaries. And so I've been here trying to figure this all out on my own while I'm dealing with the medical serious medical issues. I have had some paralegals helping me that I had to pay as well. And I'm just asking for just a fair settlement somewhere where I could actually not be homeless and to have some type of, you know, and also the home that I live in was purchased with proceeds of my home that I sold prior to the marriage that I had much prior to the marriage. And, and just basically everything was taken from me. My ex has even went as far as, as I'm throwing, burning my items with fire, setting them on fire. He's also went as far as trying to weaponize the code enforcement to, to come into my home and say that I'm a hoarder and brought all of the contents from the garage into the home. It's, it's been just a four-year nightmare that I've been dealing with for four years. This all started December of 2020, you know, him hiding money and, and the abuse, the emotional abuse, the psychological abuse. And then, like I said, the attorney that I paid money to who said that he would come in and see that I got a fair settlement and see that I received the alimony never, you know, he showed up in court saying that he was working for the petitioner. I didn't know he was suspended through the, the ARDC and through the Supreme Court. I didn't know he was suspended through the Supreme Court of Illinois. I didn't know that. Kevin P. McCarty, I did not know that when, you know, when I paid him the monies and he never returned them. And he also did that to nine other people, according to the, from what I read in the, in the court records from that action. And I don't even really even think that the initial, um, that I was even served properly initially when this all happened, because I was dealing with health conditions and, and just trying to figure all of this out basically on my own. Ms. Poster, can I ask you a couple of questions? Yes. Did you file an appeal before this appeal? Um, I did. Okay. And that, that appeal was dismissed. Is that correct? What happened was I hired a, um, a paralegal to, um, submit the appeal and she stated that- No, not the reasons that it was dismissed, but was it dismissed? Just simply that question. Do you know if it was dismissed? I'm not sure what the exact legal term was for what happened. Okay. I'm not really sure what the legal term was for what happened. And then my, my second question is the other side is making the argument that your previous appeal was dismissed. So we can't go into the issues that were involved in that and that were limited to the issues of post-judgment rulings. Do you understand what a post-judgment ruling is? No, I'm sorry. All right. Some of the things that happened afterwards, uh, in looking at your pleadings, I know that, uh, the house, the, um, the maintenance or, or alimony as it used to be called, those things after Judge Garcia decided the case, um, there was also the implementation of that judgment. And we call that post-judgment or after the judgment, right? Now the other side is going to argue that you are just limited to those things. And I just wanted you to be aware of that. So you'll, you'll understand that they're trying to limit the, this and the end to dismiss the appeal. Um, and from what I'm hearing, your complaints are from the very beginning of the case to the very end of the case. Um, so I just want you to know that there are segments, uh, that may be restricted here. Okay. Okay. All right. Thank you. You're welcome. Thank you. I'm sorry. Justice. Yeah. Thank you. Uh, do you want to continue on? Um, well, I just, just wanted to mention that, um, I mean, I'm really not sure. I just also wanted to mention that um, right now I don't have the means to, um, but I've budgeted for to stay in my current, um, home that I budgeted for it and that, um, that I could afford that amount to pay, to pay what I'm paying now and to be able to resume that. Um, I don't know if that's called an oral motion to do that, um, or not, but, um, and that Timothy, um, the Kelly, my ex-husband, he has the means to, um, relocate and he's physically able to relocate. I don't have the means to do that. Not, you know, I'm not physically, you know, able to do that right now. It's Holster. I think the divorce judgment, uh, was you and Mr. Holster were, uh, to sell the house. Did you understand that? Yes, but that's what I, one of the things that I was amending in the appeal was seeing if they could amend that in the appeal. Now, opposing counsel has filed, has, is, as Justice Hedl stated earlier, is going to say that under the law that those issues, the house sale, et cetera, uh, were not properly appealed from and that, that judgment remains and that court order remains that the house be sold. Okay. That's what they're going to say, is it? Well, yes, they're going to say as a matter of law, you did not appeal that and in some other issues you've raised, uh, because they were not timely appealed from those court orders. But you do have one issue, uh, in regard to the suspension of your maintenance because, uh, the allegation was there was no cooperation in selling the house. And that's also not true. Well, but the judge made that finding and then ruled accordingly to suspend maintenance until, uh, the house is sold. Now that issue, um, is one of the issues that you have presented to this court. And would you like to talk to that issue? I'm sorry, I can barely, I'm really sorry. Well, yeah. Would you like to talk to that last issue? I just. The issue of, of, of selling the home? Yes, you, the order in your divorce judgment was that the home be sold. Okay. And it has not been sold and the judge ordered that maintenance payments from Timothy to you be suspended until the home is sold. That is one of the issues you've raised. Right. And I also asked for that, for the, for the maintenance to be, for the state to be removed. If they placed the stay, um, on the, on the maintenance, because my husband did not pay maintenance as ordered and he did not pay maintenance throughout the entire process. So I was asking the courts also to remove the stay as well. So, yes, that was one of the things that I did ask for was for the state to be removed as well. Okay. Okay. Yeah. And, uh, and all of everything was based on, um, false statements. Um, my ex had stated that he had moved out of the home March of, um, 2021. And he did not move out of the house March, 2021. The house was not sold. Um, selling the house at this point would render me homeless because he's taken all of the money and just dissipated the assets and leaving me to where I would be homeless. If that action would take place. He also stated that, that that was basically, I guess, I guess, basically what I'm trying to say, the judge made that decision based on false statements by my ex, by the, by the opposing side, by my ex-husband making statements that I was interfering with the sale, which was not true. And I proved that it was not true. Um, I have several, I had even, um, prepared the home to be sold. I even, I even, um, had three realtors come in to look at the home and they're stating, they're just making it seem like that I was interfering, which was not true. So everything that happened was based on false statements. That's why I'm asking an oral argument right now, if I can do that. Um, I mean, for an oral, um, motion for the appellate court, I'm asking for an oral motion for the appellate court to, um, to amend, um, that to amend the, um, the, that original judgment is the original judgment was based on, on, on false statements. It was also, I was also never properly served, um, throughout that court court case. I also had, you know, two attorneys that I hired that did not advocate at all. The, the first attorney was through the domestic violence advocate, um, that was, um, recommended to me. And if she was a non for-profit attorney, so I don't really know, like, you know, what the capabilities was in that I don't believe that, that she was suspended, but the second attorney, Kevin P. McCarty was suspended through the Supreme court of Illinois. And I was not aware of that. So based on those, um, facts, I'm asking, this is an oral motion for the, um, appellate court to, um, to amend that. Your time is up at this time. I can't hear you at all. Can you hear me now? Justice, yeah, Justice Holdridge, I can barely hear you, but, uh, Ms. Hoster, he is just informing you that your time is up that red light up on your computer there. That means that your 15 minutes has run. Okay. Thank you so much, your honors. You're can you hear me now? So we'll proceed on. Yes. There's something wrong with this computer here. Okay. You'll have time in reply, uh, to reply to Mr. Kramer's argument here. Okay. Okay. Very good. Mr. Kramer, you may respond. Okay. Good morning. I apologize for my camera. Not necessary at all. Okay. I'm just recovering from a surgery and it's been rough. Uh, you know, I, I, I'm, uh, most of what, uh, my argument is, is in the pleadings and my motion to dismiss and then the briefs, um, you know, all these allegations that aren't contained in any of Ms. Hoster's briefs, uh, that she's making now, I, uh, are completely fabricated and are not true. Um, we, you know, we are of the position that, um, uh, anything that is asked to be reviewed from the judgment for dissolution of marriage itself, uh, should not be reviewed as a matter of law. Um, there was an appeal that Ms. Hoster filed that appeal, um, was dismissed because she didn't follow through on it. And certainly that was, uh, more than 30 days ago after the appeal was dismissed. Um, this is a matter from our perspective where, um, it's Ms. Hoster's effort to delay having to move out of the house. This case began in January of 2021. Um, she was served despite saying that she, uh, didn't have adequate service. She didn't do anything. So for, we had to file a motion for default. Once we filed the motion for default on, I believe it was the last day that she had, uh, uh, to go ahead and file an appearance, um, or the hearing date of our default, she then went ahead and did so pro se. She then, um, had got four continuances to try to find an attorney. So about four months went by in regards to that. And, um, when she did find an attorney, um, you know, we, uh, were ordered to pay interim fees. Uh, we, my client did do that. Um, and then one day in court on some type of a motion call, she asked the judge to dismiss her attorney, which he did. And so this has been sort of an ongoing case that we, we want done more than anything else. Um, in regards to, uh, the, um, uh, vacating the home, uh, the problem we've had is that there's, you know, there's still a gigantic storage cube that, uh, Ms. Hoster has it sitting on the driveway of the house that is now, uh, getting, uh, municipal violations because she refuses to go ahead and have that moved. Um, we made, uh, efforts to go ahead and sell the house. We had a realtor come in, um, and we had real to reach out to Ms. Hoster was only after the judge ordered that that realtor be appointed, that then Ms. Hoster came up with, you know, realtors that she wanted or, or what have you on Um, but this whole process is, has been delayed by, by her actions. Um, you know, in regards to what the judge's order was for the, the, um, stay of maintenance, I believe what judge Garcia, you know, was, was trying to do. I mean, he'd ordered her to cooperate to, for the sale of the home repeatedly. And each time, uh, she interfered with the sale of the home. And so I think, uh, he sort of used that as a stick because the whole idea was, was that this house was going to be sold. There's hundreds of thousands of dollars of equity in this house or a couple hundred thousand dollars. So yeah, it's not like when this house sells, um, Ms. Hoster's not going to be receiving any money. She's getting 50% of the proceeds, but because she was interfering with the sale, we couldn't, he couldn't, uh, get it sold. And I think judge Garcia said, Hey, if you guys are my client was paying, you know, the, the vast majority of the expenses, the mortgage on the house, well, I'm not going to have him continue to pay maintenance, uh, while she's living there. And so that that's the order sort of acted like a, a stick to encourage, um, Ms. Hoster to, to vacate the residence. So we could get that residence sold and we still want to get the residence sold. We, we, we still can't because we have her big cube on the driveway and she resides there apparently now part-time off and on, on it and still has, um, many things in the home. Um, Mr. Kramer, just a couple of quick questions. Um, sure. Does the record support the fact that your client did pay maintenance when he was supposed to prior to having it suspended by judge Garcia? Here's, here's my, here's my recollection. I apologize. I would normally run the record right now, but I can't see where they could. So my recollection was he did pay maintenance, uh, when ordered and then when, when we filed our motion to, um, to stay the payment of the maintenance, uh, that that's when he stopped. So he, he did an anticipation of a successful motion as opposed to after a ruling? Um, that, that is my recollection. Okay. I understand you just saying that by recollection. And then secondly, I mean, do we have a final order here, uh, as it relates to these post-judgment issues, if we're, I think they're arguing that the whole appeal should be dismissed, but if we do allow the post-judgment portion of this, um, it sounds like there's, this is still going on. Is that correct? Yeah, it is still going on. I think because, um, you know, uh, what the order says that once the house, uh, or once she's doesn't even have to sell. I think she just has to be, um, out of the house. Then the maintenance resumes. Um, well, maybe that, maybe, maybe that does resolve itself. Um, let me think, would that be a final order? I guess we don't have to go back in to, to resume the maintenance. It just, uh, does by operation of that, that, that order. Um, let me put this a different way. Is there, do you have any motions pending before the trial court right now? Um, let me think. I don't, I don't believe I do. No. Thank you. Okay. So your position, Mr. Kramer, is that many of these, uh, issues on appeal go to the final judgment that was entered, uh, in this case and they were not timely appealed from. That's correct. Certainly, certainly two of them go to that. The, the, um, whether that's for her, her issue where she says, whether the court properly interpreted and applied the law in ordering marital homes sold, um, and not honoring the original agreement for wife to have the marital residence. There was never any agreement to that, but, um, those are the two issues. What are the other issues? And then the other issue relates to the judgment for dissolution of marriage. And again, we don't think the court should address given that she appealed and that was dismissed already was this general language. She has that the, uh, um, uh, trial court, um, improperly interpreted the law in dividing any marital asset. I mean, that goes to the judgment of dissolution that was proper appeal taken from that in a timely manner. Is that correct? Correct. Yes. Okay. So let's move on to your suspension of maintenance. Um, what was the procedural action you bought, brought before judge Garcia that result in the suspension of maintenance? Um, we filed a, we filed a motion to find that we filed a motion to suspend the maintenance. I believe. Why would you do that? Isn't there a thing called, excuse me. I think there's a thing called a rule to show cause. Um, we we've did file a petition for rule to show cause to sell the house. I'm sorry to sell the house. Yeah, we did. We did file a rule to sell the house also. Um, but we filed the motion in regards to the maintenance because they, well, I'm asking the basic plan. Let's, let's get rid of the in courtroom petition for rule, which is what wrote in his order. It properly a rule to show cause why the judgment, why the, uh, respondent is not cooperating basically in the order of the court to have the house sold. Isn't that the proper procedure? Um, your honor, I believe, and I apologize. I usually am able to run through papers a lot quicker, but I'm, I am having a visual impairment right now, but I understand that, but I, you're well acquainted with the case. So my recollection, my recollection is, and I can see if I can find it is that we did file petition for rule in regards to her failure to cooperate in the sale of the home. Um, so I think we did show cause it's rule to show cause. Okay. Okay. And it's, do you think you filed the petition for rule to show cause? Right. And what are you asking for that rule to show cause? Well, I think originally when we filed it, we were, um, asking her to be found in contempt of court for her failure to cooperate with the realtors in the sale of the home. And, and so that's what a rule to show causes about. Right. So we did that. Then I think we requested, um, after that, when that wasn't successful to have the, uh, the maintenance stayed. And the reason being was, uh, really the, the idea behind the divorce decree was we were going to get this house sold and party. We're going to get their 50%. But since they were both living in the house and my client was paying the bills of the house. Well, those are the facts. So basically what you're saying is that rule to show cause was basically a contempt hearing for criminal, uh, indirect civil contempt, correct? Correct. Okay. And it was up to a judge to find the appellant, Mrs. Holster in, in contempt of the order of the court, correct? Correct. And then the judge is to impose a, a sanction if that order is, if that's finding is made, is that correct? Correct. Either another further directive order or some sanction. Correct. So what's your position about the suspension of maintenance? So I, again, my position with the suspension of maintenance is in, in, in, you may be correct that, that may not be directly related to the petition for rule to show cause as far as the relief granted, because we, we filed a motion also, um, to, to stay the maintenance, but you know, my, um, you know, our position is, is that the court, you know, used that also as a stick to try to enforce the court order to get that house to be sold. And I, and also I think the court did it out of fairness and equity because my client was paying all the bills of house that they were both residing in for an exceedingly longer period that was, than was anticipated by in, in a divorce decree because of Mrs. Holster's, um, uh, failure to cooperate to sell the home. And how would, would a court of review, uh, what is their, um, standard to judge whether this was an error by the trial court? Um, let me take a look what I have here. So I guess the, let's see here. I guess whether, whether it's against the manifest way to the, the evidence. Not abuse of discretion. Um, I, you know, uh, I don't want to say something that I don't know. I don't know what I have here. I thought that it was against what it was against the manifest way to the evidence. Good answer would be, you're not certain. Okay. Um, okay. Okay. You want to continue? You still have time remaining. Uh, no, no judge. Again, I I'm, I'm, I'm, um, any arguments I'd be making, I already set forth in my pleadings. I would just be rehashing what I have in the pleadings. And, and I don't know that that's very helpful. Okay. Okay. Any questions from the court for Mr. Kramer? Justice Albrecht, do you have any questions? I'm going to, I'm going to ask a few here. Um, you heard what I had said to Ms. Hoster about the appeal. Do you concede that the post judgment issue? So I've been looking closely at the record here, as you have been arguing, you did not file a rule to show cause, uh, actually Ms. Hoster filed a rule to show cause against her husband for filing, um, for not paying, uh, maintenance. That's why I asked you that question earlier, but you did file the motion to, uh, stay the maintenance, which was granted pending the appeal. Um, would you concede that at least that aspect of this case is reviewable or not? The aspect of... So judgment centered, um, she files the appeal, the order, I just, I just pulled it up. Give me one second. So the judge granted your motion, denied her rule to show cause and mentioned the fact that it was pending appeal. So, uh, one more second. There on August 24th, 23. Plaintiff's maintenance obligation is stayed granting your motion and respondents, um, petition for rule of cause rule to show cause is denied. So. Okay. Yeah. I understand a judge and I'm sorry that, that, that brings a little bit more, uh, clarity to my recollection here also. And then you filed the motion, uh, shortly after that on January 10th, not shortly, I guess a few months, three months for the realtor, uh, court to appoint a realtor to list of residents. Okay. So I think, and I, and I apologize if I misspoke earlier. I, again, my recollections, you, you refreshed my thoughts on this case with that. So I think what happened was when the appeal was filed, um, we, we, we went ahead and filed that motion to clarify that or to get directions from the court as to whether our maintenance should continue on or not continue on during the course of the appeal. That's what it was because we knew that was going to take a long time. They were both living in the, in the same house. And my look, the last story on review here was, uh, dated by Garcia, February 14th, 2024. Is that your recollection, Mr. Kramer? Um, yes. Okay. Okay. Uh, any further questions from the court? I have none. Okay. Mrs. Holster, you may respond to Mr. Kramer's response. Yes. Um, based on the multiple, um, untrue and misleading statements, um, I would like to ask if I can, for the appellate court to amend the original judgment to state that the house not be sold because my ex-husband stated that he was moving out in 2021. Um, and that has not happened. Um, you know, he's been coming back and forth to the home, burning, setting things on fire. Um, and these are these statements that he's making is untrue of my failure to cooperate is completely untrue. I had to file the rule to cause, um, to get him to make, like, he only made two maintenance, two or maybe three maintenance payments. Um, and I had, and I filed like three rules to show causes just to have him do that. And even with, with, with the other side of stating the storage cubes, that proved my point. I was getting the house decluttered for it to be sold. That's why there was a storage cube. I was storing the, any items that would be conceived as clutter into the storage cube and other storage units, which proves that I was not interfering with the sale of the house. I did everything I possibly that was humanly possible, you know, considering my health conditions that I was also struggling with and considering the fact that my son graduated from the university in may getting him through all of that. Um, I was doing all of this at the same time when all my ex-husband was just trying to prevent paying any money. So he has access right now to over to about a half a million dollars to move. If anyone has the ability, if anyone who had is failing to cooperate, it's him. You know, he has the, he has the resources. He has the, the physical ability to, to do that. And he has not done that. He has not sold the house. So because of that fact, I am asking if I to amend the, um, original judgment to state that the, that I can keep the house he's already kept a hundred, he already kept over, over $150,000 in the marital savings. So he already has way more than his share, what is equitable. So it's not like he's out of anything. Um, the house that we live in was contingent upon the sale of my home that I had prior to our marriage. So all of the, so most of the equity in the home is my equity anyway, from the sale of my home when we first were married. And those, all of those proceeds that I, the monies that I used to purchase that home was prior to our marriage. We were married in 2001. So I'm asking the appellate court, you know, if I can do an oral motion, if that's possible, um, to, to amend that. And I can't hear you. I'm so sorry. I can't hear. Yeah. Yeah. Yeah. It's not okay. Or it goes to the original judgment. Okay. Okay. Okay. Can continue on. Can you hear now? I can hear you now. Yes. And so, um, so can I do an oral motion to have the original appeal to be reopened? No, no, no, you, you're going to the original judgment that was never properly appealed. Okay. Well, the last order also stated to throw my things out on the street. Can I, you know, I filed the appeal to have that. I mean, my things were thrown on the street. My things were set on fire. He took all of the money. He's dissipated the monies. He's given it to his brother. I have proof of that. You know, he's been hiding money that the original, the attorney that was never paid me back. There's something that's flashing red. I don't know that that goes to your last yes. That we're looking at. Okay. Is there anything further? The only thing further is that the person that's in the video does not, I don't, that doesn't look like Mr. Kramer at all. Unfortunately, it is Mr. Kramer. I just was in an accident and I injured my eye. So I wearing glasses and I'm about 15 pounds lighter and that's it. But I assure you, Ms. Hoster, I am Robert Kramer, your husband's attorney or your ex husband's attorney. Questions from the court, further questions? No. No. Okay. Well, counsel Kramer and Mrs. Hoster, we thank you for your presentation in this matter and it will be taken under advisement and the decision written decision from this court will be coming forth.